[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence: June 18, 1993 Date of Application: June 18, 1993 Date Application Filed: June 18, 1993 Date of Decision: October 23, 2001
Application for review of sentence imposed by the Superior Court, Judicial District of Fairfield, at Bridgeport.
Docket Number CR 92-75761.
Frank J. Riccio, Defense Counsel, for Petitioner
Susann Gill, Assistant State's Attorney, for the State.
Sentence Affirmed.
 BY THE DIVISION
Reference is made to the decision of the Sentence Review Division in D.N. CR 91-66428.
In this case following a jury trial the petitioner was convicted of the following crimes and sentenced as follows:
1. Threatening, § 53a-62(a)(7). 1 year
2. Carrying a pistol without a permit, § 29-35. 3 years CT Page 15936
3. Criminal possession of a firearm, § 53a-217 (a). 3 years
4. Interfering with an officer, § 53a-167a(a). 1 year
5. Interfering with an officer, § 53a-167a(a). 1 year
6. Using a motor vehicle without permission, § 53a-119b 1 year
7. Escape from custody, § 53a-171(b) 8 years
All the sentences were consecutive to each other and to any sentence presently being served. The total effective sentence was 18 years consecutive to the sentence of 22 years imposed in D.N. 91-66428.
The factual basis for these convictions is reported in State v. Laws,37 Conn. App. 276, 278, 280 (1995).
 On May 15, 1992, at 12:30 p.m., Officer Michael Atkins of the Bridgeport police was patrolling the west side of Bridgeport when he was informed that there was a man carrying a gun on Yale Street. Atkins radioed in and went to investigate. Atkins observed the defendant on Wordin Avenue and motioned for the defendant to approach the patrol car. The defendant approached the patrol car while fumbling with something under his sweatshirt. Suspecting that the defendant might be armed, Atkins existed the cruiser without turning it off or removing the keys from the ignition. He walked toward the rear of the cruiser, keeping the vehicle between himself and the defendant. When Atkins circled the cruiser, the defendant began to run south on Wordin Avenue, and Atkins pursued him.
 As they were running, the defendant pointed a gun at Atkins and yelled at him to get back. Atkins fell to the ground. He then got up, drew his gun and continued to pursue the defendant. The defendant again turned and pointed his gun at Atkins, and the chase continued. The defendant turned onto Hanover Street and Atkins Lost sight of him.
 As Atkins searched for the defendant, he heard dogs barking in the rear yard of 46-50 Wordin Avenue. As he CT Page 15937 entered the yard, he was joined by fellow officer Michael Muckro. Muckro was responding to Atkins' earlier radio call. He had seen Atkins' cruiser sitting in the middle of Wordin Avenue with the engine running. A bystander pointed in the direction that the defendant and Atkins had run. When Muckro saw Atkins in the yard of 46-50 Wordin Avenue, he exited his cruiser and joined him.
 The officers noticed that the baking dogs were looking up to the second and third floor porches of the house at 56-50 Wordin Avenue. Atkins and Muckro decided to climb the back stairs of the house. With Atkins in the lead, they reached the third floor and Atkins saw the defendant's foot on the porch. Atkins pointed his gun at the defendant and yelled for him to freeze. The defendant yelled something in response. Atkins ordered the defendant to show his hands. The defendant said that he did not have anything, and Atkins proceeded onto the third floor porch.
 On the porch, Atkins found the defendant with both legs over the railing, apparently preparing to jump. While still pointing his gun, Atkins told the defendant he was under arrest. Atkins then reholstered his weapon and grabbed the defendant by his sweatshirt. The defendant broke away and jumped from the porch, landing on the hatchway to the cellar. Atkins remained on the third floor porch holding the hood that had ripped off of the defendant's sweatshirt.
 Atkins and Muckro ran down to the backyard and searched for the defendant. Someone from an adjacent house approached the officers and told them that the defendant had run toward the front of the house. Atkins and Muckro returned to the house to search for the gun. As they searched, they heard police sirens and saw police lights heading up the street.
 On Wordin Avenue, a cruiser driven by Officer James Sheffield was responding to the scene. As Sheffield turned from State Street onto Wordin Avenue, he saw the defendant jump into Atkins' cruiser, which was still running, and speed off. Sheffield and Officer Ronald Henderson, who arrived in another cruiser, CT Page 15938 chased the defendant. The defendant hit two parked cars and a fence with Atkins' cruiser and then the engine stalled. Henderson and Sheffield exited their cruisers and attempted to get the defendant out of Atkins' cruiser, but the defendant locked the doors. After unsuccessfully attempting to smash the cruiser windows with a nightstick, Henderson drew his gun and shot out the rear window of the cruiser. The defendant restarted Atkins' cruiser and sped away. Henderson and Sheffield returned to their own cruisers and resumed the chase. On Bird Street, in the P.T. Barnum apartment complex, the defendant jumped out of the moving cruiser. The cruiser continued onto a sidewalk where it hit a baffler and stopped. The defendant disappeared behind a building and was not apprehended until three weeks later.
Law's argument is essentially that he appears to have been punished for rejecting a proposed plea bargain and taking this case to trial. There is nothing in the record which would indicate any vindictiveness by the sentencing court. Even assuming that, had Laws not withdrawn his guilty plea, the Court would have accepted the proposed agreement, sentencing courts frequently and rightfully, consider an admission of guilt as a first step toward rehabilitation. Also, during a trial, the Court usually gets a far more complete picture of the nature of the offense, its impact on the victims as well as a better assessment of the defendant.
In reviewing this sentence pursuant to the provisions of § 43-28 of the Practice Book, the Division finds it is appropriate and proportionate. It is clearly intended, as it's primary purpose, to protect the public from further victimization by an incorrigible criminal. Accordingly, the sentence is affirmed.
Klaczak, Norko and Miano, J.s, participated in this decision.